HAWTHORNE, Justice.
 

 Joseph Franicevich instituted this suit seeking damages for the death of his wife, who was killed as a result of being struck by an automobile driven by the defendant Jules John Lirette. After trial on the merits the district court awarded plaintiff $6,100 plus interest and costs. The Court of Appeal, Fourth Circuit, increased the award to $10,000, and in all other respects affirmed the judgment of the lower court. See La.App., 124 So.2d 318. A writ of certiorari was granted on application of the defendant.
 

 The accident happened on a clear day at about 2:00 p. m. on Louisiana State Highway No. 23 in Buras. This highway had an 18-foot paved strip in its center and a shell shoulder about eight feet wide on each side. The stretch where the accident occurred was straight, with nothing to obstruct a motorist’s view. The defendant was driving in the west lane going south at a speed somewhat under the 25-mile-an-hour limit in Buras. As Mrs. Franicevich, plaintiff’s wife, was crossing the highway on foot from the west side to the east side, she was hit by defendant’s automobile. She died en route to the hospital from injuries received.
 

 The defendant testified that he was driving at a speed of about 22 miles per hour, following an automobile 75 or 80 feet ahead of him, with his view on the highway directly ahead, when Mrs. Franicevich appeared running diagonally across the highway; that when he first saw her, she was only a few feet ahead -of his automobile and practically in front of its center, so close that there was no way for him to
 
 *469
 
 avoid the accident; that although he applied his brakes, the car he was driving struck the deceased at about its front left light near the edge of the hood. He further testified that he had no opportunity to give a warning of his approach after the deceased had appeared in front of his car like somebody who “came from the sky”. He said also that after his car came to a stop, he requested someone to call a doctor; and evidently someone did, for a doctor appeared on the scene within a short time.
 

 On the east or river side of the highway there were a beauty parlor and an apartment house, and it was across from these buildings that the accident occurred. Also on that same side of the highway were other business establishments including a post office. At the point where the deceased was struck there was no crossing for pedestrian use, and no cross road or intersection.
 

 Besides the defendant the only eyewitness to this tragedy who testified in the case was a Mrs. Wooley, who had parked her car in front of the post office with its rear pointing toward the highway. She testified that shortly after she got into her car, backed it onto the shoulder of the highway, and proceeded in a northerly direction on the shoulder preparatory to making a U turn, she saw Mrs. Franicevich leaving the porch of her home on the west side of the highway; that as she made the U turn, she noticed the deceased coming in the direction of the highway; that she herself stopped her car on the west shoulder to observe traffic and saw the car driven by the defendant approaching at a very slow rate of speed, and that she had ample time to proceed in a southerly direction ahead of the oncoming car; that through her rear-view mirror she saw the deceased step onto the highway directly in front of the defendant’s car.
 

 A deputy sheriff of the parish made a complete and thorough investigation before Mrs. Franicevich was taken away in an ambulance and while defendant’s car was in the position at which it had stopped immediately after the accident. According to this officer’s testimony and a plat which he had prepared, defendant’s car left skid marks on the pavement for 36 feet in a straight line in the west lane of the highway, the lane in which defendant had been driving south. Eleven feet from the beginning of the skid marks the officer found on the highway a box of bobby pins and a comb, and concluded that the point where these articles were found was the point at which the defendant’s car had struck plaintiff’s wife. The injured woman lay in the west or southbound lane of the highway about two feet from the center line.
 

 The negligence of defendant-relator is apparently conceded, as under the facts it would have to be, and the contributory
 
 *471
 
 negligence of the deceased is also evident. Ordinarily contributory negligence by the deceased would be fatal to plaintiff’s case, but he seeks to recover under the so-called doctrine of “discovered peril”, as discussed at length by this court in the two leading cases of Rottman v. Beverly, 183 La. 947, 165 So. 153, and Jackson v. Cook, 189 La. 860, 181 So. 195.
 
 [1]
 
 It is plaintiff’s contention that had defendant been exercising reasonable care and a proper lookout, he could have seen what he should have seen — that is, that the deceased was in apparent peril— in time to take steps to avoid the accident. Plaintiff’s reliance on this doctrine is evidently based principally on the testimony of the defendant himself, to the effect that when he first saw plaintiff’s wife, she was immediately in front of his car running diagonally across the highway and looking in the direction opposite to that from which he was approaching.
 

 In the case of Fontenot v. Freudenstein, La.App., 199 So. 677, 680, the Court of Appeal had this to say about the doctrine of discovered peril:
 

 “But even the doctrine which has been established by those two cases [Rottman v. Beverly and Jackson v. Cook, both cited supra] requires that there must be something about the appearance or actions of the plaintiff to indicate that he is in peril and does not realize it.”
 

 In Jones v. American Mutual Liability Ins. Co., La.App., 189 So. 169, 174, the Court of Appeal correctly stated that “ * * if there was nothing about the plaintiff’s position or physical condition to indicate that he was in danger, it is immaterial whether defendant saw him or not. The paramount inquiry must therefore always be — whether defendant, if he had been maintaining a proper lookout and had seen the plaintiff, would have observed that the latter was in a position of peril”; to which statement we add:
 
 in time to act in a way to prevent the accident.
 

 It is well settled that a plaintiff who seeks recovery under the doctrine of apparent peril has the burden of establishing all of the facts essential to make this doctrine applicable, and that these facts must be proved and will not be presumed. See 65 C.J.S. Negligence, § 213, Last Clear Chance, p. 978; Courtney v. Louisiana Railway & Navigation Co., 133 La. 360, 63 So. 48; Heydorn v. New Orleans Public Service, Inc., La.App., 35 So.2d 893; Anderson v. Southern Bell Tel. & Tel. Co.,
 
 *473
 
 La.App., 74 So.2d 761; see also Delta Fire & Casualty Co. v. Texas & Pacific Railway Co., 229 La. 710, 86 So.2d 681. In Anderson v. Southern Bell Tel. & Tel. Co., supra, the Court of Appeal observed:
 

 “A
 
 plaintiff who seeks recovery under the doctrine of the last clear chance and the extensions thereof found in Rottman v. Beverly, supra, and Jackson v. Cook, supra, must carry the burden of showing all of the facts essential to make such doctrines applicable and such facts must be proven and will not be presumed.” [74 So.2d 763]
 

 Unfortunately for plaintiff in the instant case, the record is barren of evidence that there was anything about the deceased’s appearance or movements that would have led a reasonably prudent man to believe that she was going to place herself in imminent danger. The only testimony concerning her actions prior to the time she was struck by the automobile is that of Mrs. Wooley, which is of no benefit to the plaintiff. In the absence of any unusual actions or conduct by the deceased a reasonably prudent motorist would have been justified, had he seen her, in assuming that she would stop and look before venturing onto the highway. We cannot assume, without evidence, that there was anything significant about her actions or appearance prior to the moment she was hit by the car, for, as stated above, the plaintiff in a case such as this has the burden of proving the facts essential to make the doctrine applicable. In other words, even if the defendant had been keeping a proper lookout and had seen Mrs. Franicevich, there was nothing, so far as the record shows, to indicate to the defendant that she was in a position of peril and was unaware of it in time for him to take steps to avoid the accident.
 

 For the reasons assigned the judgment of the Court of Appeal is reversed, annulled, and set aside, and plaintiff’s suit is dismissed at his costs.
 

 [1]
 

 . Although the theory under which plaintiff seeks recovery is called the doctrine of “discovered peril”, we are in accord with the statement by an able jurist of the Court of Appeal that “It should more properly be called the doctrine of ‘apparent peril’ since its result is to hold the motorist liable not because he has failed to avoid striking a plaintiff whose peril has been ‘discovered’, but because he has failed to see and to appreciate a peril which would have been apparent had he looked”. See Fontenot v. Freudenstein, La.App., 199 So. 677, 680.