AYRES, Judge.
This is an action in tort predicated upon uninsured-motorist provisions of a public *391 liability insurance policy issued plaintiff by defendant. The cause of action is based on an accident of February 28, 1965, allegedly occurring when plaintiff, while walking on East Texas Street in Bossier City, was struck by an uninsured motor vehicle driven by Willie T. (Mae) Davenport.
The trial court, although finding the motorist free from fault, concluded that, even should she have been negligent, plaintiff was obviously guilty of contributory negligence which would bar his recovery. From an adverse judgment, plaintiff prosecutes this appeal.
The accident occurred about 2:00 p. m. at the intersection of Butler and East Texas Streets. The latter, a segment of U. S. Highway 80, is a main east-west 4-lane concrete thoroughfare through Bossier City. The opposing traffic lanes are separated by a slightly raised concrete divider 4 feet 10 inches in width. Butler Street, which intersects the thoroughfare at right angles, is a 2-lane, 2-way passageway of asphalt surface without curbs, gutters, or walkways. An overhead conventional electric traffic signal controls the movement of traffic through the intersection.
Plaintiff, aged 63, accompanied by his wife, was attempting to walk across East Texas Street from south to north at the east edge of the Butler Street intersection when the accident occurred. The two, walking together, with plaintiff in the lead by a distance of only a foot or two, stepped from the curb into East Texas Street and had gone only three or four feet when Mrs. McCartney observed the approach of the Davenport car. The wife thereupon attempted to grab her husband and hold him back, but was unable to reach him in time to prevent his walking into the path of the oncoming car which struck and knocked him down.
The Davenport car was one of several in a funeral procession which had entered East Texas Street from the south only three or four blocks west of the scene of the accident and which was to proceed only about a block farther before making a right turn into Hamilton Lane. It was occupying a somewhat middle position in the funeral procession. This car, whose speed was shown not to have exceeded 25 or 30 m. p. h., had its headlights on as did the others in the procession.
The evidence is contradictory with reference to the traffic signal at the intersection. Plaintiff and his wife testified that the light was green for them to proceed across the street when they stepped off the curb. No other witness corroborated their testimony in this respect. In support of this testimony, plaintiff and his wife testified that an unidentified car, likewise stopped on Brttler Street, after awaiting a change to a favorable signal, then entered and cleared the intersection ahead of the Davenport car. This testimony, also, was unsupported by the testimony of any other witness.
Willie Cage and Manuel Triggs, passengers in the Davenport vehicle, testified with reference to the occurrence. Cage testified that the driver had a green light at a distance of three car lengths before she entered the intersection. Triggs did not observe the light, but saw a car stopped on Butler Street, apparently waiting for them to clear the intersection.
Both Cage and Triggs testified that plaintiff stepped out into the street into the vehicle’s traffic lane just before they reached him. Cage described plaintiff’s movements by saying that upon reaching the curb plaintiff hesitated, then stepped out into the street; that his companion grabbed at him but missed him. The driver of the vehicle testified that the traffic light was on “caution” when she observed it just before entering the intersection.
From the defense testimony, it is established that the driver applied her brakes and swerved her car in an effort to avoid striking plaintiff, but that she was nevertheless unable to avoid doing so. She tes *392 tified that she did not see him until he stepped off the curb almost in front of her car.
While plaintiff testified that he made appropriate observation before stepping out into the street and observed no vehicles approaching from his left, the court held, and we think correctly so, that plaintiff did not make such observation. The Davenport car was there, as were other cars in the procession, and Mrs. McCartney saw it. No reason has been established why plaintiff, had he looked, could not have seen it.
The issues concern only factual matters and these were resolved in defendant’s favor. Plaintiff, however, would have us apply the doctrine of discovered peril.
There is, of course, a duty imposed upon those who operate motor vehicles to keep a sharp lookout ahead to discover the presence of those who might be in danger. This duty never ceases. What they can see, they must see, and, in legal contemplation, they do see. Their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability. Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935).
As was pointed out in Franicevich v. Lirette (La.App.) 124 So.2d 318, 320-321 (4th Cir.1960 — writs granted) :
“Since the decision of the Supreme Court in Rottman v. Beverly, 183 La. 947, 165 So. 153, the courts of this State have uniformly applied what is referred to as the doctrine of discovered peril under which it has been held that there is liability in an automobile operator who, had he been on the alert, could have avoided striking a person who is in a position of peril of which that person is unaware or from which that person is unable to extricate himself. And that doctrine has been extended by the decision in Jackson v. Cook, 189 La. 860, 181 So. 195, to include the situation in which the defendant does not actually discover the peril but should have done so, provided, of course, that at the time at which the peril should have been discovered there was an opportunity for the defendant to avoid the accident.”
In reviewing, under certiorari, the Franicevich case, the Supreme Court (241 La. 466, 129 So.2d 740, 742 [1961]) noted no error in the statement of principles above quoted, but, in a statement with reference to the case of Jones v. American Mutual Liability Ins. Co. (La.App.) 189 So. 169, 174 (Orl.1939—writ denied), specifically gave its approval wherein it stated:
“ * * <3our^ 0f Appeal correctly stated that ‘ * * * if there was nothing about the plaintiff’s position or physical condition to indicate that he was in danger, it is immaterial whether defendant saw him or not. The paramount inquiry must therefore always be — ■ whether defendant, if he had been maintaining a proper lookout and had seen the plaintiff, would have observed that the latter was in a position of peril’; to which statement we add: in time to act in a way to prevent the accident.”
In the instant case there was nothing in plaintiff’s appearance to indicate that he was in peril which the motorist could or should have observed in time to take evasive action to prevent striking him. As already observed, she did all that could have been reasonably expected to prevent the accident. She applied her brakes and swerved her car as plaintiff stepped from the curb into her path of travel. She had neither time nor opportunity to do more. The doctrine sought to be invoked is not applicable to the facts.
From our review of the record, we find no basis for disagreement with the conclusions reached by the trial court.
The judgment appealed is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.