153 So.2d 594 (1963)
Enid FORET, Divorced Wife of Pierre THIBODAUX and Now Wife of Louis DE MARCO
v.
LUMBERMENS MUTUAL CASUALTY COMPANY et al.
No. 1081.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1963.
Rehearing Denied June 4, 1963.
*595 Donald A. Hammett, New Orleans, and Robert D. Edwards, Gretna, for defendants and appellants.
Lazard Levy, Westwego, for Enid Foret De Marco, plaintiff and appellee.
Lemle & Kelleher, Shirley C. Friend, Jr., New Orleans, intervenor and appellee.
Before McBRIDE, REGAN and HALL, JJ.
REGAN, Judge.
Plaintiff, Enid Foret De Marco, instituted this suit against the defendants, Norman Duet and his liability insurer, Lumbermens Mutual Casualty Company, endeavoring to recover the sum of $25,552.99, representing funeral expenses and also damages for the loss of love and affection of her minor son, Malvin Thibodaux, who died as a result of the injuries he incurred when Duet's vehicle struck the bicycle upon which he was riding in Barataria Road.
The defendant insurer answered and denied liability. In explanation thereof, it pointed out that the family policy it had issued to Charles Duet, the driver's father, only covered a 1958 Edsel, which was not involved in the accident. The automobile actually implicated therein was a 1960 Mercury which was regularly used by the Duet family and, therefore, not covered by the terms of its insurance. In the alternative, it pleaded that the plaintiff's son was guilty of contributory negligence in riding an unlighted bicycle, and that its liability is limited, in conformity with its contract of insurance, to $5,000.00.
The defendant driver answered and asserted that the accident resulted from the sole negligence of the bicyclist who was riding in a dark roadway without lights attached to his bicycle when the accident occurred. In the alternative, he pleaded the contributory negligence of the bicyclist.
When the deceased was fatally injured, he was engaged in delivering newspapers for the Times-Picayune Publishing Company; therefore, its compensation insurer, St. Paul Fire and Marine Insurance Co., intervened in order to recover the sum of *596 $1486.99, the amount it had paid in compensation as a result of the boy's death.
From a judgment awarding plaintiff $10,000.00 and the intervenor $1486.99,[1] the defendants have prosecuted this appeal. The insurer was cast as a solidary obligor of Duet only to the extent of $5,000.00, the limit of its liability. Plaintiff has answered the appeal, requesting an increase in quantum.
This case was consolidated with a similar suit instituted by Pierre Thibodaux, the deceased boy's father, who is divorced from his mother. The suit referred to is entitled Pierre Thibodaux v. Norman J. Duet and Lumbermens Mutual Casualty Company. Plaintiff therein seeks to recover $10,000.00 damages for the loss of love and affection of his minor son.
The record reveals that the accident from which this litigation arose occurred at approximately 5:00 a.m. on January 22, 1961, in Barataria Road in Westwego. Although this area is lighted by street lights, there are large trees bordering the roadway and the branches thereof extend over the roadway. Thus, even with the illumination provided by the street lights, the roadway is relatively dark at this hour of the morning in the month of January.
For a period of approximately nine hours prior to the accident, the defendant driver, accompanied by Joseph Doucet, had visited several bars where he played cards and drank beer. Defendant and Doucet returned to the Duet home in Westwego in order to obtain some money with which to purchase food, and thereafter while they were en route to a restaurant the collision occurred.
Shortly before the accident, the defendant turned his head to speak to Doucet, his guest passenger, and for approximately ten seconds, he was not observing the roadway ahead. Suddenly Doucet saw the bicycle approximately 20 feet in front of their vehicle and warned the driver. Defendant explained that when he turned his eyes toward the roadway again, he still could not see the bicycle and did not know in which direction to turn his vehicle in order to avoid the accident. The impact occurred almost simultaneously with the warning his passenger had uttered.
On this appeal, the defendants have conceded that Duet was negligent in not maintaining a proper lookout; however, they assert that the deceased was guilty of contributory negligence in riding in a darkened roadway without having lights or reflectors attached to his bicycle.
The evidence relative to whether the bicycle was equipped with either reflectors or lights is conflicting; however, we are of the opinion that this need not be resolved.
If we were to assume arguendo that the bicycle was unlighted, we would still be compelled to conclude that the negligence of Duet was the proximate cause of the accident. Defendant's headlights were burning when the accident occurred, but he was not looking ahead until a split second before he struck the bicycle. Thus, even if the bicycle was equipped with lights, defendant would not have observed them since his eyes were focused upon his passenger instead of the roadway.
Defendants argue that the deceased's failure to affix lights to his bicycle, which is required by law, constitutes negligence per se. They rely on the rationale of Lawrence v. Core, La.App., 132 So.2d 82, wherein the court reasoned that a bicyclist's failure to attach lights to his vehicle was the proximate cause of the accident. We thoroughly agree with that result; however, we are convinced that the rationale thereof is inapposite here, as we shall hereinafter point out.
*597 In the Lawrence case a motorist was driving at a legal rate of speed, closely following another vehicle. When he attempted to overtake and pass the forward vehicle he turned into the passing lane of the highway, and at this moment his headlights revealed that an unlighted bicycle was immediately ahead of him. He swerved but was unable to avoid striking the bicycle. The distinction between that and the case before us is obvious. In this case, the defendant had every opportunity to observe the boy who was riding in his lane of traffic, had he been looking ahead. In the Lawrence case, the bicyclist was either obscured by the preceding vehicle or was so far to the motorist's left that he was not picked up by the headlights until defendant started to pass, and then it was too late, from the standpoint of time, to avert the accident.
Since we have disposed of the plea of contributory negligence, we now turn our attention to the interesting question of the insurer's liability.
Lumbermens Mutual Casualty Company issued a Family Automobile Policy to Charles Duet, which also afforded coverage to his son, Norman, who resided with his father. The automobile insured was designated as a 1958 Edsel, owned by Charles Duet.
When the accident occurred, Norman Duet was driving a 1960 Mercury, owned by William Bennett. The Duets had been using the Mercury since May of 1960, at which time its owner left it with the family because he was entering military service. Bennett used his own automobile on two occasions when he was home on leave, and the use thereof occurred between May of 1960 and January 22, 1961, the date of the accident.
On the day the accident occurred, the Edsel was inoperative due to the conceded fact that Charles Duet was repairing the brakes and replacing the fuel pump.
Although the policy excludes coverage for a non-owned vehicle used regularly by the insured, it does cover a non-owned vehicle used as a temporary substitute for the insured vehicle.
Temporary substitute is defined in the contract of insurance as follows:
"`temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."
Two requirements for coverage under this provision are clearly met, namely, the insured did not own the vehicle, and the insured vehicle was "withdrawn from normal use" when the accident occurred.
Therefore, we are only required to decide whether the Mercury was being used by Norman Duet as a substitute for the Edsel when the accident occurred.
The driver thereof testified in this connection, which stands in the record uncontradicted, as follows:
"Q. How often did you use his car?
"A. Not too often, we had a car of our own, but at the time (of the accident) it was broken."
We conclude that the Mercury was covered under the policy as a "temporary substitute automobile", and that it was being used by Norman Duet with his father's (the insured) consent when the accident occurred.
With respect to plaintiff's request for an increase in quantum, we are of the opinion that the trial judge did not abuse his discretion in awarding her the sum of $10,000 for the loss of love and affection of her son, which is adequate insofar as money may make it so.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] The plaintiffs have stipulated that the award to the intervenor should be deducted from their respective judgments as follows:

$1243.50 from the wife's award
$ 243.49 from the husband's award.